**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ENVIRONMENTAL INTEGRITY ) <br> PROJECT ) <br> One Thomas Circle, NW, Suite 900 ) <br> Washington, DC 20005, ) <br>   ) <br> FOOD & WATER WATCH ) <br> 1600 P Street, NW, Suite 300 ) <br> Washington, DC 20036, ) <br>   ) <br> THE HUMANE SOCIETY OF ) <br> THE UNITED STATES ) <br> 2100 L Street, NW ) <br> Washington, DC 20037, ) <br>   ) <br> CENTER FOR FOOD SAFETY ) <br> 660 Pennsylvania Avenue, SE, Suite 302 ) <br> Washington, DC 20003, and ) <br>   ) <br> IOWA CITIZENS FOR COMMUNITY ) <br> IMPROVEMENT ) <br> 2001 Forest Avenue ) <br> Des Moines, IA 50311 ) <br>   ) <br>       Plaintiffs, ) <br>   ) <br>       vs. ) <br>   ) <br> GINA MCCARTHY, Administrator, ) <br> United States Environmental Protection ) <br> Agency; and UNITED STATES ) <br> ENVIRONMENTAL PROTECTION ) <br> AGENCY ) <br> 1200 Pennsylvania Ave., NW ) <br> Washington, DC 20460 ) <br>   ) <br>       Defendants. ) <br> _____ ) | Case No.: 1:13-cv-1306 <br><br><br> **COMPLAINT FOR INJUNCTIVE AND** <br> **DECLARATORY RELIEF** |

**COMPLAINT**

Plaintiffs Environmental Integrity Project (EIP), Food & Water Watch (FWW), the Humane Society of the United States (HSUS), Center for Food Safety (CFS), and Iowa Citizens for Community Improvement (ICCI), (collectively "Plaintiffs"), on behalf of themselves and their members, allege as follows:

## I. NATURE OF ACTION

1.      This is an action pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq*. In violation of the APA, Defendant Environmental Protection Agency (EPA) took unlawful, arbitrary, and capricious action by withdrawing a rule ("Proposed CAFO Reporting Rule" or "Rule") proposed pursuant to § 308 of the Clean Water Act (CWA), 33 U.S.C. § 1318, intended to provide EPA with information necessary to carry out the CWA's National Pollutant Discharge Elimination System (NPDES) permitting program for Concentrated Animal Feeding Operations (CAFOs). A copy of the Proposed CAFO Reporting Rule is attached to this complaint as Exhibit A and incorporated herein by reference.

2.      CAFOs are facilities where "[a]nimals . . . have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period . . ." and that meet certain size or discharge criteria. 40 C.F.R. § 122.23(b)(1)-(2). CAFOs concentrate thousands and even millions of animals in crowded and often unsanitary conditions. CAFOs also generate, store, and must ultimately dispose of tremendous volumes of manure and other waste; this storage and disposal can result in discharges of pollutants, including nitrogen, phosphorus, pathogens, antibiotics, hormones, and metals, into waterways throughout the U.S. Discharged pollutants can cause severe impairments to water quality, ecosystems, and biodiversity, while endangering human health and welfare.

2

3. Despite decades of CAFO regulation under the CWA, EPA, the agency authorized to administer the CWA, lacks basic information about the nation's thousands of CAFOs, such as their location, size, ownership, waste management procedures, history of illegal discharges, or whether they have or require a CWA permit. EPA is uncertain how many CAFOs exist, but estimates that there are more than 18,500 nationwide. Of these, approximately 7,500 currently operate under a CWA permit.

4. Section 308 of the CWA authorizes EPA to require CAFO operators to submit information that EPA requires to carry out the objectives of the CWA. The primary objectives of the CWA are to restore and protect water quality. 33 U.S.C. § 1251.

5. On October 21, 2011, EPA published the Proposed CAFO Reporting Rule in the Federal Register. 76 Fed. Reg. 65431 (proposed Oct. 21, 2011). The Rule proposed two options under which the agency would require either all CAFOs or those CAFOs located in undetermined "focus watersheds" to submit "essential information" to EPA, including "contact information, location of the CAFO's production area, [CWA] permitting status, number, and type of animals, and number of acres available for land application." *Id.* at 65436.

6. On July 20, 2012, EPA published notice in the Federal Register that it was taking final agency action on the Rule by withdrawing it in its entirety instead of finalizing either of the two proposed options. 77 Fed. Reg. 42679 (Jul. 20, 2012).

7. In the same Federal Register notice, EPA stated that it would pursue an approach of CAFO information gathering outside of the § 308 process, whereby the agency would attempt to obtain "essential" CAFO information from state and federal agencies. *Id*. at 42681-82.

8. EPA failed to provide a reasonable explanation for its decision to withdraw the Rule. Instead, the administrative record in front of EPA at the time of the withdrawal of the Rule

directly controverts the agency's assertion that existing state and federal agency information will provide EPA with the same type of information it would obtain through a CWA § 308 information gathering process. The record demonstrates that EPA's current approach will not provide the agency with the information that it needs to properly regulate CAFO pollution as required under the CWA.

9. As the record before EPA at the time it took its final action does not provide a reasonable basis for the agency's withdrawal of the Rule, Plaintiffs seek declaratory relief establishing that EPA's withdrawal is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiffs also request equitable relief vacating the unlawful rule withdrawal decision, and directing EPA to take reasonable final action on the proposed rule. Finally, Plaintiffs seek reasonable attorneys' fees and costs incurred in bringing this action.

## II. JURISDICTION AND VENUE

10. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this case presents a federal question; the APA, 5 U.S.C. §§ 701-706, which provides for judicial review of final agency actions for which there is no other adequate remedy at law; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, which provides for declaratory and further relief.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because no real property is involved in this action and plaintiffs EIP, HSUS, FWW, and CFS are incorporated and/or have their principal places of business in this district.

### III. PARTIES

12. Plaintiff EIP is a national nonprofit organization dedicated to advocating for more effective enforcement of environmental laws, including the CWA. EIP works to improve federal and state regulation of CAFOs and to improve water quality in areas significantly impacted by CAFO pollution, focusing on the Upper Mississippi and Chesapeake Bay watersheds. Since 2002, EIP has advocated for more comprehensive and effective CWA permitting for CAFOs nationwide to help communities impacted by water pollution from this industry gain the protection of the CWA. EIP also works to gather and analyze pollution data and provide this information to the public, and is therefore injured by EPA's failure to promulgate a thorough, transparent CAFO information collection rule under the CWA. EIP submitted detailed comments on the Proposed CAFO Reporting Rule to support its organizational interest in strengthening the implementation and enforcement of the CWA as it applies to CAFO pollution.

13. Plaintiff FWW is a national nonprofit organization working to ensure that the food, water, and fish we consume is safe, accessible, and sustainably produced. So that all consumers can enjoy and trust in the food and drink they eat and drink, FWW helps people take charge of where food comes from; keep clean, affordable, public tap water flowing freely to homes; protect the environmental quality of oceans; ensure that the government does its job protecting citizens; and educate about the importance of keeping the global commons – shared resources – under public control. FWW has expended significant resources compiling detailed information about CAFOs that EPA should collect and maintain for the public, including their locations and pollution histories, to create its online Factory Farm Map and draft its report, *Factory Farm Nation: How America Turned its Livestock Farms into Factories*. FWW submitted detailed comments on the Proposed CAFO Reporting Rule to support its

organizational interest in strengthening the implementation and enforcement of the CWA as it applies to CAFO pollution.

14. Plaintiff HSUS is a national nonprofit organization that promotes the protection of all animals. HSUS is headquartered in the Washington, D.C. area, and has offices, affiliates, or staff in 40 states and the District of Columbia. On behalf of its millions of members and constituents, HSUS advocates for better laws to protect animals and their environment; conducts campaigns to combat animal abuse and promote strong animal welfare policies; and advocates against practices that injure, harass, or otherwise harm animals, including practices that can result in CAFOs discharging or otherwise releasing pollutants into the natural environments of farm animals, domestic animals, or wildlife.

15. Plaintiff CFS is a national nonprofit membership organization dedicated to protecting human health and the environment by curbing the proliferation of harmful food production technologies, such as CAFOs, and instead promoting sustainable agriculture. CFS represents nearly 350,000 farmer and consumer members throughout the country who support safe, sustainable agriculture. CFS's mission is to protect the public's right to know how their food is produced. CFS utilizes regulatory actions, citizen engagement, legislation, and when necessary, litigation, to promote transparency and accountability in the factory farm industry.

16. Plaintiff ICCI is a nonprofit organization that works to empower and unite grassroots Iowans of all ethnic backgrounds to take control of their communities; involve them in identifying problems and needs and in taking action to address them; and be a vehicle for social, economic, and environmental justice. ICCI's thousands of members work to protect rural communities from factory farm water and air pollution at the state and national level. ICCI regularly compiles data about Iowa CAFOs and illegal CAFO discharges and shares this

information with its members and the media.  ICCI submitted detailed comments on the Proposed CAFO Reporting Rule to support its organizational interest in strengthening the implementation and enforcement of the CWA as it applies to CAFO pollution.

17.     Plaintiffs bring this action on their own behalf and on behalf of their members. Plaintiffs and their members have been and continue to be injured by EPA's withdrawal of the Proposed CAFO Reporting Rule and failure to collect basic information about CAFOs across the U.S., including CAFOs illegally discharging pollutants into rivers and streams.  Plaintiffs' members are injured because, *inter alia*, they use and enjoy rivers, streams, and other waterways impaired by nutrients, bacteria, and other pollution discharged by CAFOs, and lack access to information about CAFOs that may be discharging pollution into waterways they use for swimming, fishing, or other recreational, aesthetic, or economic purposes.  EPA's withdrawal of its Proposed CAFO Reporting Rule injures Plaintiffs' members' use and enjoyment of these waters, causing Plaintiffs' members to curtail activities that they would otherwise enjoy, derive less enjoyment from other activities, and experience reasonable concern about the potential for future harm.  These injuries are actual, concrete, ongoing, and particularized, and money damages cannot redress them.  The requested relief will redress these injuries because it would require EPA to take reasonable final action on the Proposed CAFO Reporting Rule, and any reasonable course of action will result in the collection of more information about CAFOs using EPA's CWA § 308 authority.

18.     Plaintiff organizations are also injured by EPA's withdrawal of the Proposed CAFO Reporting Rule, and Plaintiffs have associational standing to bring this suit on their own behalf to protect their organizational interests.  Plaintiffs' organizational purposes are adversely affected by EPA's action, which prevents Plaintiffs from obtaining access to information about

CAFOs that they would use to more effectively advocate for public health, water quality, the welfare of rural communities, and the health and welfare of animals. Furthermore, but for EPA's actions, Plaintiffs would not have to spend as much of their resources seeking basic information about the CAFOs polluting waterways throughout the U.S., and could direct these resources to other priorities. The requested relief will redress Plaintiffs' informational and organizational injuries because it would require EPA to take reasonable final action on the Proposed CAFO Reporting Rule, and any reasonable course of action will result in the collection of more information about CAFOs using EPA's CWA § 308 authority.

19. Defendant Gina McCarthy, Administrator of the EPA, is charged with the supervision and management of the agency's responsibilities under the CWA, including the statute's § 308 information collection authority. Plaintiffs sue Ms. McCarthy in her official capacity only.

20. Defendant EPA is the agency of the federal government that has the primary responsibility under the CWA to protect the waters of the United States from pollution.

## IV. STATUTORY FRAMEWORK

21. The CWA is the principal federal statute enacted to protect and restore the waters of the United States. The primary objectives of the CWA are "to restore and maintain the chemical, physical and biological integrity of the nation's waters" and to "eliminate[]" the discharge of pollutants into navigable waters. 33 U.S.C. § 1251(a).

22. The primary CWA program to restore and maintain water quality is the NPDES program, which requires dischargers defined as "point sources" to obtain and comply with pollution control permits. 33 U.S.C. § 1342. The CWA defines CAFOs "from which pollutants are or may be discharged" as point sources. *Id.* § 1362(14).

23. Unless in compliance with specific provisions of the CWA, "the discharge of any pollutant by any person shall be unlawful." *Id*. § 1311(a). These provisions of the CWA include § 301, which requires EPA to establish technology-based effluent limitations for CAFOs and other point sources, and § 402, which establishes the NPDES permit program. EPA has established regulations and effluent limitations for CAFOs. 40 C.F.R. §§ 122, 412.1-4.

24. Section 308 of the CWA provides that "[w]henever required to carry out the objective" of the CWA, "including but not limited to…developing…any effluent limitation, or other limitation, prohibition, or effluent standard," "determining whether any person is in violation of any such effluent limitation, or other limitation, prohibition or effluent standard," or carrying out the objectives of § 1342 (the NPDES permit program), "the [EPA] Administrator shall require the owner or operator of any point source to (i) establish and maintain such records, (ii) make such reports, (iii) install, use, and maintain such monitoring equipment or methods…, (iv) sample such effluents…, and (v) provide such other information as [s]he may reasonably require." 33 U.S.C. § 1318(a).

## V.  FACTUAL BACKGROUND

### A.  CAFO Pollution Degrades Water Quality and Threatens Public Health

25. EPA and state agencies have documented significant harm to our nation's waterways resulting from CAFO discharges. EPA has estimated that CAFOs produce more than 300 million tons of manure each year, and this waste contains numerous pollutants, including: nutrients such as nitrogen, phosphorus, and potassium; pathogens and parasites such as *Salmonella*, *Escherichia coli*, *Giardia*, and *Trichinella*; heavy metals such as arsenic, cadmium, lead, iron, manganese, nickel, copper, and zinc; and pharmaceuticals such as antibiotics and

hormones.  Proposed CAFO Reporting Rule, 76 Fed. Reg. at 65433-34.  When introduced into waterways, these pollutants threaten water quality, aquatic life, and public health.

26. CAFOs discharge pollutants from manure storage, feed storage, mortality management, and livestock confinement facilities, as well as from waste application areas.  Land disposal of CAFO waste often takes place at rates in excess of cropland's ability to assimilate manure nutrients and prevent runoff.  *See* U.S. Gov't Accountability Office, GAO-08-944, *Concentrated Animal Feeding Operations: EPA Needs More Information and a Clearly Defined Strategy to Protect Air and Water Quality from Pollutants of Concern* (2008), available at http://www.gao.gov/new.items/d08944.pdf (hereinafter "GAO Report").  The resulting discharges of pollutants have led EPA to conclude that "[a]gricultural operations, including CAFOs, now account for a significant share of the remaining water pollution problems in the United States."  National Pollutant Discharge Elimination System Permit Regulation and Effluent Limitation Guidelines and Standards for Concentrated Animal Feeding Operations (CAFOs), 68 Fed. Reg. 7176, 7181 (Feb. 12, 2003).  Indeed, agriculture "is the leading contributor of pollutants to identified water quality impairments in the Nation's rivers and streams."  *Id*.  Twenty-nine states have recently made similar findings, identifying animal feeding operations as contributors to water quality impairment in EPA's 2009 National Water Quality Inventory.  Proposed CAFO Reporting Rule, 76 Fed. Reg. at 65434.

27. EPA has concluded that CAFOs' widespread water pollution impacts "may be due, in part, to inadequate compliance with existing regulations or to limitations in CAFO permitting programs."  *Id*.

**B.      Development and Withdrawal of EPA's Proposed CAFO Reporting Rule**

28.     On November 20, 2008, EPA finalized revisions to its CWA regulations for CAFOs (2008 CAFO Rule) in response to a 2005 decision by the United States Court of Appeals for the Second Circuit that vacated parts of EPA's previous CAFO regulations. *See Waterkeeper Alliance, Inc. v. EPA*, 399 F.3d 486 (2d Cir. 2005). The 2008 CAFO Rule changed the legal threshold for when a CAFO must apply for an NPDES permit, and thereby limited the number of CAFOs required to obtain NPDES permits. As a result of this limitation, states and EPA would not obtain basic information about all CAFOs with the potential to discharge through the permitting process.

29.     Several environmental organizations challenged EPA's 2008 CAFO Rule under the APA and entered into settlement negotiations with EPA. The organizations and EPA reached a Settlement Agreement on May 25, 2010. Among other things, the Settlement Agreement required EPA to propose a CAFO information collection rule pursuant to its authority under § 308 of the CWA within 12 months of the Settlement Agreement's effective date, and to take final action on the proposed rule within 24 months of the Settlement Agreement's effective date.

30.     On October 21, 2011, EPA published the Proposed CAFO Reporting Rule, which included two potential EPA actions to collect information from CAFOs. The first option proposed would have required all CAFOs nationwide to submit basic information to EPA; the second would have required EPA to select focus watersheds and then request basic information from CAFOs located in those watersheds. EPA also solicited comments on alternative ways for the agency to obtain the necessary information about CAFOs and meet the objectives of the Proposed CAFO Reporting Rule.

31. EPA set out several reasons for its Proposed CAFO Reporting Rule, including the numerous public health and water quality threats posed by CAFO discharges of nutrients, pathogens, heavy metals, and pharmaceuticals. Proposed CAFO Reporting Rule, 76 Fed. Reg. at 65433-34. In summarizing the need for an information gathering effort under the agency's § 308 authority, the Proposed CAFO Reporting Rule stated that "facility-specific information…would improve EPA's ability to effectively implement the NPDES program and…ensure that CAFOs are complying with the requirements of the CWA." *Id.* at 65436. EPA further explained that because "[u]nlike many other point source industries, EPA does not have facility-specific information for all CAFOs in the United States," the type of information proposed for request was "essential…to carry out NPDES programmatic functions." *Id*.

32. The Proposed CAFO Reporting Rule incorporated the findings of the September 2008 GAO report. *Id*. at 65434-35. The GAO Report supported EPA's conclusion that a § 308 information collection rule was necessary to obtain the information needed to properly regulate CAFOs under the CWA. GAO Report at 48.

33. The GAO Report found that "EPA does not have data on the number and location of CAFOs nationwide and the amount of discharges from these operations," GAO Report at 31, and that EPA consequently "has neither the information it needs to assess the extent to which CAFOs may be contributing to water pollution, nor the information it needs to ensure compliance with the Clean Water Act," *id*. at 48. The GAO Report further found that data obtained from state agencies "are inconsistent and inaccurate and do not provide EPA with the reliable data it needs to identify and inspect permitted CAFOs nationwide," *id*. at 17, and that "[n]o federal agency collects accurate and consistent data on the number, size, and location of

CAFOs," *id*. at 4.  EPA's limited consultations with state agencies prior to withdrawing the Rule support the GAO Report findings.

34.     Nevertheless, in disregard of its earlier findings and the record before it, on July 20, 2012, EPA took final action by withdrawing the proposed rule in its entirety.  77 Fed. Reg. at 42679.  This notice of final action is attached as Exhibit B.  In its withdrawal notice, EPA stated that it believed that "at this time it is more appropriate to obtain CAFO information from existing sources," *id*. at 42681, including the U.S. Department of Agriculture and state agencies, *id*. at 42682.  In issuing the withdrawal, EPA did not change its position that gathering basic information about CAFOs is "essential," or offer a reasoned connection between the record and its new position.

35.     EPA's withdrawal was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA.  The administrative record and the Government Accountability Office's findings plainly contradict the agency's unsupported rationale for withdrawing the Proposed CAFO Reporting Rule.

## CAUSE OF ACTION

**DEFENDANTS HAVE VIOLATED THE APA BY
WITHDRAWING THE PROPOSED CAFO REPORTING RULE**

36.     Plaintiffs reallege all preceding paragraphs and incorporate them by reference herein.

37.     Plaintiffs are entitled to judicial review under the APA, which grants that right to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."  5 U.S.C. § 702.  EPA's withdrawal of the Proposed CAFO Reporting Rule is a "final agency action for which there is no other adequate remedy in a court" within the meaning of the APA, *id.* § 704.

38.  Pursuant to the APA, courts "shall … hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." *Id*. § 706(2)(A), (D). "Agency action" is defined to include "the whole or a part of any agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id*. § 551(13). EPA's withdrawal of the Proposed CAFO Reporting Rule constitutes final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in violation of the APA, *id*. § 706.

39.  Plaintiffs have been adversely affected and aggrieved by EPA's action.

40.  The Equal Access to Justice Act, 28 U.S.C. § 2412, entitles Plaintiffs to costs of disbursements and costs of litigation, including reasonable attorney fees.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter a judgment:

(1)  declaring that EPA's withdrawal of the Proposed CAFO Reporting Rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in violation of the APA, 5 U.S.C. § 706(2)(A);

(2)  vacating the unlawful withdrawal of the proposed rule, requiring EPA to make a new final decision;

(3)  issuing injunctive relief requiring EPA to take final action on the Proposed CAFO Reporting Rule that is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," within 90 days;

(4)  awarding Plaintiffs their litigation costs and reasonable attorneys' fees in this action, as authorized in 28 U.S.C. § 2412; and

(5) ordering such other relief as the Court may deem just and proper.

Dated: August 28, 2013

Respectfully submitted,

/s/ Peter Brandt
Peter Brandt (District of Columbia Bar No. 982936)
Hannah Connor (District of Columbia Bar No. 1014143)
Jonathan R. Lovvorn (District of Columbia Bar No. 461163)
The Humane Society of the United States
2100 L Street NW
Washington, DC 20037
(202) 676-2354
(202) 676-2357 (facsimile)
pbrandt@humanesociety.org
hconnor@humanesociety.org
jlovvorn@humanesociety.org
*Attorneys for Plaintiff Humane Society of the United States*

Adam Kron (District of Columbia Bar No. 992135)
Environmental Integrity Project
One Thomas Circle NW, Suite 900
Washington, DC 20005
(202) 263-4451
(202) 296-8822 (facsimile)
akron@environmentalintegrity.org
*Attorney for Plaintiffs Environmental Integrity Project and Iowa Citizens for Community Improvement*

George A. Kimbrell (*Pro Hac Vice pending*)
Paige M. Tomaselli (*Pro Hac Vice pending*)
Center for Food Safety
303 Sacramento Street, Second Floor
San Francisco, CA 94111
(415) 826-2770
(415) 826-0507 (facsimile)
gkimbrell@centerforfoodsafety.org
ptomaselli@centerforfoodsafety.org
*Attorneys for Plaintiff Center for Food Safety*

Susan Kraham (D.D.C. admission pending)
Columbia University School of Law
Environmental Law Clinic
435 West 116th Street
New York, New York 10027

(212) 854-5008
(212) 854-3554 (facsimile)
Susan.Kraham@law.columbia.edu
*Attorney for Plaintiff Food & Water Watch*